UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TERRI A. TURNER,

    Plaintiff,

  v.                                                 Case No. 17-CV-1130

NANCY BERRYHILL,
Acting Commissioner, Social Security Administration,

    Defendant.

## DECISION AND ORDER

Terri A. Turner seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for supplemental security income and disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). For the reasons stated below, the Commissioner's decision is reversed and the case is remanded for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

## BACKGROUND

On May 20, 2013, Turner applied for supplemental security income and disability insurance benefits, alleging disability beginning on February 10, 2013. The claims were denied initially and upon reconsideration. A hearing was held before an Administrative Law Judge ("ALJ") on January 26, 2016. (Tr. 32–65.) Turner, represented by counsel, appeared and testified. (*Id.*) Kathleen Doehla, a vocational expert ("VE"), also testified at the hearing. (*Id.*)

In a written decision issued March 2, 2016, (Tr. 17–25), the ALJ found that Turner had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, arthritis, cerebrovascular disease, status post knee replacement, diabetes mellitus, organic mental disorder, affective disorder, and somatoform disorder, (Tr. 19). The ALJ found that she did not have an impairment or a combination of impairments that met or medically equalled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"). (Tr. 20–22.)

The ALJ further found that Turner had the residual function capacity ("RFC") "to perform light work, with frequent climbing of ramps or stairs, balancing, stooping, or crouching and occasional climbing of ladders, rope or scaffolds, kneeling or crawling." (Tr. 21.) The ALJ found that Turner may have no more than occasional concentrated exposure to hazards such as dangerous, moving machinery or unprotected heights. (*Id.*) Further, the ALJ determined that Turner lacks the ability to understand, remember, and carry out detailed instructions, but retains the sustained concentration necessary for simple work of a routine type if given normal breaks because of moderate limitations in concentration. (*Id.*) Turner would be unable to maintain assembly line or production pace employment because of moderate limitations in concentration and pace, but maintains the pace necessary to hold employment permitting a more flexible pace. (*Id.*) Because of moderate difficulties with social functioning, Turner may only engage in brief and superficial contact with supervisors, coworkers, and the general public. Turner should experience no more than occasional changes in the work setting. (*Id.*)

The ALJ found that Turner was unable to perform any past relevant work. (Tr. 23.) However, given her age, education, work experience, and RFC, the ALJ determined that there existed jobs in significant numbers in the national economy that Turner could perform. (Tr. 24.) Thus, the ALJ concluded that Turner had not been under a disability from February 10, 2013 through the date of the decision. (*Id.*) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Turner's request for review. (Tr. 1–5.)

## DISCUSSION

### 1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts,

reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### 2. *Application to This Case*

Turner, now acting *pro se*, alleges that the ALJ erred by finding that she is not disabled. (Docket # 17 at 1.) She alleges that pertinent medical records were not before the ALJ, (Docket # 17 at 2), and she submitted medical records allegedly demonstrating her disability. (Docket ## 17-1 and 19-1.) Turner also alleges that the hearing was unfair because her cognitive/behavioral deficits impair her ability to function appropriately in social situations, especially when under stress. (Docket # 17 at 2.) Turner argues that the ALJ failed to properly consider her testimony or her family members' testimony as well as medical evidence of her disabilities, and the testimony of the VE about her work history. (Docket # 17 at 3–4.) Finally, Turner alleges that the ALJ improperly concluded that she was able to work in a laundry facility. (*Id.* at 17.) Because I find that the ALJ erred in her review of Turner's medical records and in her determination that Turner was not fully credible, the case will be remanded on that basis and I will address Turner's other arguments only briefly.

#### 2.1. Credibility Determination

Turner alleges that the ALJ did not properly consider her testimony or that of her family members, or the medical evidence, in determining the severity of her impairments.

4

Under 20 C.F.R. § 404.1529(c)(3)[1] and SSR 96–7p,[2] when assessing allegations of pain or other disabling symptoms, the ALJ follows a two-step process. First, she must determine whether the claimant suffers from some medically determinable impairment that could reasonably be expected to produce the symptoms. If not, the alleged symptoms cannot be found to affect the ability to work. If, however, the ALJ finds that the claimant has an impairment that could produce the symptoms alleged, the ALJ must determine the extent to which the symptoms limit the claimant's ability to work. In making this second determination, the ALJ considers the entire record, including the claimant's daily activities; the location, duration, frequency and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes to alleviate pain or other symptoms; treatment, other than medication, for relief of pain or other symptoms; any measures the claimant uses to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

Under Social Security Ruling 96–7p, in effect at the time of the ALJ's decision, the ALJ's determination regarding claimant credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." In this regard it is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not)

---

[1] Text effective until March 27, 2017.
[2] Superseded by SSR 16-3p, March 16, 2016.

credible." *Id.* It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). At the same time, "[t]he requirement that the ALJ articulate his consideration of the evidence is deliberately flexible." *Stein v. Sullivan*, 966 F.2d 317, 319 (7th Cir. 1992). The "ALJ need not provide a complete written evaluation of every piece of testimony and evidence." *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995). Moreover, an ALJ's credibility determination is viewed with deference because the ALJ, not a reviewing court, is in the best position to evaluate credibility. *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (citing *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008)). A reviewing court will reverse the ALJ's credibility determination "only if it is so lacking in explanation or support that we find it 'patently wrong.'" *Id.* (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

In this case, the ALJ's credibility determination is fatally lacking in support. The ALJ relies upon several incorrect readings of Turner's medical records and neglects major relevant pieces of evidence. For example, the ALJ indicates that "[w]hile claimant also complains of chronic severe headaches, there is nothing to show that claimant has had chronic uncontrolled headaches severe enough to interfere with [her] capacity for performing work related activities for the requisite twelve months." (Tr. 21–22.) However, the record is replete with complaints of headaches, sometimes severe; multiple references to and diagnoses of complex migraine; and prescription and use of migraine mediations, over the course of several years. (E.g., Tr. 349–386, 431, 501–544, 545–564, 633–635, 898, 967, 972, 980, 983, 986–988, 1003–1004, 1007–1010, 1018.) The ALJ does not explain why she

disregarded these records, and the assertion that "there is nothing to show" severe, debilitating headaches for the requisite time period is patently wrong.

Likewise, the ALJ's stated rationale for finding Turner not fully credible is not consistent with the record. In explaining her credibility determination, the ALJ points to a December 2013 progress note that purportedly indicates malingering. (Tr. 22, citing Ex. 13-F at 9.) In fact, that progress note indicates the opposite: "Psychological factors affecting pain and vice Versa, **dubious of any malingering** or conversion type disorder. Multiple coexisting medical illnesses" (emphasis added). The note thus appears to support the opposite interpretation to the one given it by the ALJ.

Similarly, the ALJ cites psychiatric testing from June 2013 that she interprets as indicating that Turner's complaints had no organic basis. (Tr. 22, citing Ex. 3F at 3, Tr. 396.) However, the cited report does not say Turner's complaints have no organic basis. The report indicates that Turner's psychological testing results are difficult to interpret and indicates that further neuropsychological testing is warranted, noting that "[s]he appears to have a significant level of depression, which could be in reaction to her physical problems, or, alternatively could be contributing to her physical problems." (Tr. 398.) There is not a logical link between this evidence and the ALJ's conclusion that Turner's complaints had no organic basis and therefore she was not credible.

Further, the ALJ points to a May 2015 treatment record indicating that despite Turner's alleged disability, she felt well enough to travel to Seattle and place her own luggage in the overhead compartment. (Tr. 22, citing Ex. 20-F at 7.) There is not a logical bridge between the evidence that Turner traveled to Seattle and placed an item overhead,

7

and the conclusion that Turner was not a reliable witness about her pain and limitations. There is no inherent inconsistency between being disabled and traveling. Traveling while suffering from disabling symptoms might simply indicate the force of will to travel to meet an overriding need in spite of extreme difficulty, rather than an exaggerated condition. In fact, evidence in the record about this episode appears to support, rather than contradict, Turner's allegations of pain and physical limitations. The ALJ does not mention Turner's testimony at the hearing that she traveled only with difficulty, requiring wheelchair assistance through the airport and onto the plane. (Tr. 42.) And while Turner did report that she placed an item in an overhead compartment, she also reported that this action exacerbated her pain. (Ex. 20-F at 7, Tr. 918.) *Cf. Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016).

In continuing the credibility determination, the ALJ points to objective medical testing indicating that Turner did not have a stroke, despite her continued claims to have suffered a stroke. (Tr. 22.) Similarly, she points to Turner's continued claims to suffer from seizures despite an EEG showing no signs of epilepsy, and records apparently showing that Turner became upset and walked out of a doctor's appointment when the doctor suggested the possibility of psychogenic, rather than epileptic, seizures. (*Id.*, citing Ex. 21-F at 102, Tr. 1035.) While objective testing supports a conclusion that neither a stroke or epilepsy caused Turner's symptoms, it does not support a conclusion that Turner did not suffer symptoms or accurately relay them. The fact that Turner may apply medical terms imprecisely has no bearing on whether she suffers subjective symptoms.

Lastly, in her discussion of Turner's credibility, the ALJ points to the fact that Turner told her doctor that she is quite limited, causing the doctor to calculate a disability score of 60%. The ALJ assigned this score no weight because it used different criteria than those used by the SSA. (Tr. 22.) There is no logical bridge between the weight that should be given to Turner's doctor's disability score, and whether Turner herself was a credible witness to her pain and/or other subjective complaints.

Thus, the ALJ provides no coherent rationale for rejecting Turner's allegations of headaches or for determining that she was not fully credible regarding her subjective symptoms. Because the factors identified by the ALJ as informing her negative assessment of Turner's credibility were either improperly analyzed or unsupported by substantial evidence, the determination itself must be considered patently wrong. *See Ghiselli*, 837 F.3d at 778–779. And because that determination informed the ALJ's findings about Turner's RFC and her ability to adjust to other work, the case must be remanded.

### 2.2. Adequacy of the Record

Turner argues that she was denied a full and fair hearing because the ALJ did not request medical records that would have supported the totality of her disabling medical conditions. (Docket # 17 at 1–2.) Turner claims that these include behavioral counseling records, neurological reports, pulmonary function reports, and diabetic treatment reports. (*Id.* at 2.) Because the case is being remanded on other grounds, I need not address this argument in detail. However, it is important to emphasize that it is Turner's responsibility to bring relevant evidence to the attention of the ALJ:

> (a) General. In general, you have to prove to us that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to

> whether or not you are blind or disabled. This duty is ongoing and requires you to disclose any additional related evidence about which you become aware. This duty applies at each level of the administrative review process, including the Appeals Council level if the evidence relates to the period on or before the date of the administrative law judge hearing decision. We will consider only impairment(s) you say you have or about which we receive evidence.
> . . .
> (c) Your responsibility. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled.

20 C.F.R. § 404.1512.[3] The ALJ does have a responsibility to develop a complete medical history by making reasonable efforts to help claimants get medical reports from their own medical sources when the claimants give the ALJ permission to request the reports. 20 C.F.R. § 404.1512(d). But the responsibility for informing the ALJ about known evidence rests with the claimant.

The ALJ's responsibility to develop the record is extremely limited when the claimant is represented by counsel, as Turner was at the administrative level. "The ALJ is entitled to assume that a claimant represented by counsel 'is making his strongest case for benefits.'" *Nicholson v. Astrue*, 341 F. App'x 248, 253–254 (7th Cir. 2009) (citing *Glenn v. Sec'y of Health and Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987)). *See also Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 679 (7th Cir. 2010) (finding that where a plaintiff, represented by counsel, gathered some evidence but not other evidence, the proper inference was that the plaintiff decided the other evidence would not be helpful, and upholding the ALJ's decision when otherwise based on substantial evidence); *Felmey v. Colvin*, No. 13-C-219, 2013 WL 4502090, at *16 (E.D. Wis., Aug. 22, 2013) (citing *Glenn*, 814 F.2d at 391) (rejecting argument that ALJ should have asked for a treating source statement, because

plaintiff was represented by counsel at the hearing). Here, it does not appear that Turner or her counsel informed the ALJ of the existence of other medical records. At the hearing, the ALJ asked counsel if he had any objections to the evidence in the file, and counsel replied, "No objections." (Tr. 34.) The ALJ then asked, "Is there anything outstanding?" to which counsel replied, "No, I believe the file's complete." (Tr. 34–35.) Thus, the missing records cannot be the basis for remand here.

On remand, the ALJ may consider all medical records or other evidence Turner may provide from the relevant time period. This includes, but is not limited to, the orthopedic record dated August 31, 2015 and the neuropsychological evaluation dated October 30, 2015 that Turner appended to her brief. (Docket # 19-1 at 1, 11–19). Turner is again reminded that it is her responsibility to provide all relevant medical records.

If Turner continues *pro se*, however, the ALJ should provide reasonable assistance to Turner to ensure that the record contains all relevant medical evidence. There appear to be important medical records missing from the file, in particular records pertaining to Turner's psychological condition. The neuropsychological evaluation from 2015 that Turner appended to her brief found that Turner had a cognitive impairment exacerbated by psychiatric difficulties, severe unspecified depression, and severe unspecified anxiety. (Docket # 19-1 at 14.) It noted that her verbal and visual memory and learning were borderline/extremely low, (*id.*), supporting Turner's allegations of memory problems. It noted mild to significant difficulties with working memory, executive functioning, processing speed, and nondominant hand fine motor dexterity. (*Id.*) The report stated that

---

[3] Text of 20 C.F.R. § 404.1512(a) effective April 20, 2015 to March 26, 2017.

Turner's cognitive impairment was consistent with psychiatric conditions (e.g., severe depression and anxiety) and not consistent with a neurodegenerative process (e.g., Alzheimer's dementia) or a focal neurological incident (i.e., cerebral vascular accident). The exam suggested counseling and consideration of psychotropic intervention. (*Id.*) This detailed report provides information about Turner's functional abilities related to memory and fine motor coordination, as well as thorough descriptions of her psychological condition, that are not reflected in the current medical records. The report also references earlier neuropsychological testing on October 11, 2013 and November 1, 2013, the records of which would be useful.

There is reason to suspect that other helpful medical records might exist regarding Turner's physical limitations. For example, Turner testified and medical records confirm, at least in passing, that she wears orthotic devices and uses a walker and cane intermittently and that she has fine motor difficulty. The orthopedic record Turner appended to her brief does not discuss her functional limitations, but an orthopedic evaluation or some other functional evaluation from that time period might exist.

### 2.3. A Full and Fair Hearing

Turner alleges that, due to her cognitive/behavioral deficits, she was not able to respond effectively when the ALJ asked her about her pain level. (Docket # 17 at 3.) Presumably, Turner is alleging that her deficits prevented her from providing the ALJ with full details of the extent of her pain at the hearing. As an initial matter, because Turner was represented by counsel, she is presumed to have presented her best case. *Nicholson v. Astrue*, 341 F. App'x 248, 253–254 (7th Cir. 2009) (citing *Glenn v. Sec'y of Health and Human Servs.*,

814 F.2d 387, 391 (7th Cir. 1987)). At no point did counsel indicate that Turner was having a problem understanding or communicating. Furthermore, Turner does not say how the ALJ might have accommodated or accounted for her difficulties, how she misunderstood any particular question, or what details about her pain she might have shared that would have affected the outcome. While Turner's speech does appear to have been halting and sometimes difficult to understand, both the ALJ and counsel took steps to clarify Turner's meaning at the hearing. The ALJ recognized that she had misunderstood Turner's "2013" as "2014" (Tr. 35–36) and "washes" as "watches" (Tr. 36), and she also asked Turner to repeat herself several times (e.g., Tr. 38 ("A: [B]efore my stroke, I used to read a lot. Q: Before your what? A: Before my stroke. Q: Okay."); Tr. 39 ("A: The – the – I – I feel sick. I take – because, I have to – well, I don't have a choice. Q: I'm sorry. Can you say that again?").) At one point, counsel intervened to clarify Turner's speech for the ALJ. (Tr. 50.) The transcript of Turner's speech at the hearing is consistent with the overall record, which contains multiple comments about Turner's speech being slow and sometimes difficult to understand. But beyond a vague assertion that her deficits prevented her from "responding effectively, when ALJ asked about pain level," Turner has not pointed to any specific instance in which she either misunderstood a question or failed to respond adequately because of her conditions.

In her reply brief, Turner makes what looks like an ineffective assistance of counsel claim. (Docket # 19 at 1–2.) The constitutional right to effective assistance of counsel, while recognized in criminal proceedings as grounded in the Sixth Amendment, *see Strickland v. Washington*, 466 U.S. 668, 685–86 (1984), is extremely limited or nonexistent in civil cases.

13

"There is no principle of effective assistance of counsel in civil cases." *Slavin v. C.I.R.*, 932 F.2d 598, 601 (7th Cir. 1991). Courts have consistently held that there is no ineffective assistance of counsel claim in social security appeals. *See e.g. Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3rd Cir. 2017); *Comett v. Astrue*, 261 F. App'x 644, 651 (5th Cir. 2008); *Russell v. Chater*, 62 F.3d 1421, at *2 (8th Cir. 1995); *Strople v. Colvin*, No. 3:13–cv–1518–J–34MCR, 2015 WL 1470866, at *8 (M.D. Fla. Mar. 31, 2015) ("A social security claimant who was represented by counsel of his own choosing cannot at a later time complain that the representation was inadequate."); *Lemoine v. Colvin*, No. 14–cv–079–CJP, 2015 WL 2148421, at *5 (S.D. Ill. May 6, 2015); *Meadows v. Astrue*, No. 1:11–cv–02378, 2012 WL 5205798, at *4 (N.D. Ohio Sept. 25, 2012); *Dowd v. Commissioner of Social Security*, No. 8-1272, 2009 WL 2246153 (W.D. Penn. July 26, 2009); *Nelson v. Astrue*, No. 07-2622, 2008 WL 4078464, at *7 (E.D. Penn. Aug. 29, 2008). Thus, even if Turner's counsel provided inadequate representation to her, that cannot be a basis for remand here.

## CONCLUSION

Turner argues that the ALJ improperly discredited evidence and testimony about the severity of her pain and other symptoms. I agree that the ALJ erred and must re-examine these issues on remand. Turner shall provide all relevant records, and if Turner proceeds *pro se*, the ALJ will provide reasonable assistance to ensure a complete record.

Although Turner requests that this Court reverse the Commissioner's decision and find her disabled, that is appropriate only "if all factual issues have been resolved and the record supports a finding of disability." *Briscoe ex rel Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005). Here, there are unresolved issues and this is not a case where the "record

supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Therefore, the case is appropriate for remand pursuant to 42 U.S.C. § 405(g), sentence four.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 6th day of December, 2018.

BY THE COURT:

*s/Nancy Joseph*_____
NANCY JOSEPH
United States Magistrate Judge